2016-2135

# United States Court of Appeals
# for the Federal Circuit

GLOBAL TEL*LINK CORPORATION,

*Appellant,*

*v.*

SECURUS TECHNOLOGIES, INC.,

*Appellee.*

*Appeal from the United States Patent and Trademark Office
Before the Patent Trial and Appeal Board in
Case No. IPR2015-00156, U.S. Patent No. 7,551,732*

## APPELLEE SECURUS TECHNOLOGIES, INC.'S RESPONSE BRIEF

Jeffrey R. Bragalone
Justin B. Kimble
Daniel F. Olejko
Terry A. Saad
BRAGALONE CONROY PC
2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
214-785-6670

*Counsel for Appellee
Securus Technologies, Inc.*

Dated: November 16, 2016

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee Securus Technologies, Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

Securus Technologies, Inc.

2. The name of the real party in interest represented by me is:

N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Securus Technologies, Inc. has no parent company and no other publicly held company owns 10% or more of Securus Technologies, Inc.'s stock.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Bragalone Conroy PC: Jeffrey R. Bragalone, Justin B. Kimble, Daniel F. Olejko, and Terry A. Saad

Date: November 16, 2016        */s/ Jeffrey R. Bragalone*
                                    Signature of Counsel

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

COUNTER STATEMENT OF THE ISSUES.........................................1

COUNTER STATEMENT OF THE CASE.............................................1

COUNTER STATEMENT OF THE FACTS ...........................................2

   A. Overview of the '732 Patent ...........................................................2

   B. Overview of the Invalidating Prior Art – Rae ..................................6

   C. Overview of the Proceeding Below..................................................8

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT .....................................................................................13

   A. Standard of Review ......................................................................13

   B. Substantial Evidence Supports the Board's Decision that Independent
      Claims 8 and 15 Are Anticipated by Rae.....................................14

      1. Substantial Evidence Supports the Board's Determination that Rae
         Discloses Storing "Files." .......................................................14
         a. The Board's Construction of "File" Is Correct...................... 14

            i. Substantial Evidence Supports the Board's Factual Finding that
               the Ordinary and Customary Meaning of "File" Is "a Collection of
               Data."............................................................................ 15

            ii. The Ordinary and Customary Meaning of "File" Is Consistent
               with the Intrinsic Evidence. ............................................ 16

         b. GTL Fails to Show that Any Error in the Board's Construction of
            "File" Requires Reversal. .................................................. 19

      2. Substantial Evidence Supports the Board's Determination that Rae
         Discloses the Claimed "Streaming Converter."......................23

a.  GTL Is Estopped From Challenging to the Board's Construction of "Streaming Converter" and Decision Not to Construe "Analog to Digital Converter." ...................................................................................... 23

b.  Substantial Evidence Supports the Board's Finding that Rae's VoIP Gateway Is the Claimed "Streaming Converter." ................................... 25

CONCLUSION ....................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Sandoz, Inc.*,
   566 F.3d 1282 (Fed. Cir. 2009) ........................................................................21

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
   618 F.3d 1354 (Fed. Cir. 2010) ........................................................................29

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   --- F.3d ----, 2016 WL 5864573 (Fed. Cir. Oct. 7, 2016) .................................15

*In re Baxter Int'l, Inc.*,
   678 F.3d 1357 (Fed. Cir. 2012) .................................................................. 17, 29

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
   616 F.3d 1249 (Fed. Cir. 2010) ........................................................................27

*In re Bigio*,
   381 F.3d 1320 (Fed. Cir. 2004) ........................................................................27

*In re Bond*,
   910 F.2d 831 (Fed. Cir. 1990) ..........................................................................20

*Bivings v. U.S. Dep't of Agriculture*,
   225 F.3d 1331 (Fed. Cir. 2000) ........................................................................20

*Consol. Edison Co. of N.Y. v. N.L.R.B.*,
   305 U.S. 197 (1938) ............................................................................. 13, 16, 21

*Cook Biotech Inc. v. Acell, Inc.*,
   460 F.3d 1365 (Fed. Cir. 2006) ........................................................................22

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016) ......................................................................................14

*Engel Indus., Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed. Cir. 1996) ..........................................................................28

*Finisar Corp. v. DirecTV Grp., Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008) .................................................................. 20-21

*Grabis v. Office of Personnel Mgmt.*,
    424 F.3d 1265, 1270 (Fed. Cir. 2005)............................................................ 19-20

*Harari v. Lee*,
    656 F.3d 1331 (Fed. Cir. 2011)......................................................................19

*Indacon, Inc. v. Facebook, Inc.*,
    824 F.3d 1352 (Fed. Cir. 2016) ......................................................................18

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002) ......................................................... 13, 16, 21

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
    780 F.3d 1376 (Fed. Cir. 2015) ................................................................ 13, 24

*Key Pharm. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ........................................................................25

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ......................................................................19

*Microsoft Corp. v. Proxyconn, Inc.*,
    789 F.3d 1292 (Fed. Cir. 2015) ......................................................................13

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
    215 F.3d 1281 (Fed. Cir. 2000) ......................................................................25

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011) ......................................................................27

*Rambus Inc. v. Rea*,
    731 F.3d 1248 (Fed. Cir. 2013) ......................................................................13

*Resonate, Inc. v. Alteon Websystems, Inc.*,
    338 F.3d 1360 (Fed. Cir. 2003) ......................................................................27

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ......................................................................28

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991) ......................................................................21

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ............................................................17

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
  831 F.2d 1017 (Fed. Cir. 1987) ............................................................18

*Teva Pharms., Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ............................................................15

*Trivascular, Inc. v. Samuels*,
  812 F.3d 1056 (Fed. Cir. 2016) ............................................................14

*In re Watts*,
  354 F.3d 1362 (Fed. Cir. 2004) ............................................................13

*Wi-LAN USA, Inc. v. Apple Inc.*,
  830 F.3d 1374 (Fed. Cir. 2016) ............................................................17

*World Class Tech. Corp. v. Ormco Corp.*,
  769 F.3d 1120 (Fed Cir. 2014) ............................................................17

*Zenon Envtl. v. U.S. Filter Corp.*,
  506 F.3d 1370 (Fed. Cir. 2007) ............................................................22

## Statutes

35 U.S.C. § 316(a)(4) ............................................................................14

## Rules

37 C.F.R. § 42.100(b) ............................................................................14

## **STATEMENT OF RELATED CASES**

No other appeal in or from this case has been before either this Court or any other appellate court. This Court's decision may directly affect, or be directly affected by, the related cases styled *Global Tel*Link Corp. v. Securus Technologies, Inc.*, No. 3:13-cv-00713 (E.D. Va. filed Oct. 21, 2013), and *Global Tel*Link Corp. v. Securus Technologies, Inc.*, No. 3:14-cv-0829 (N.D. Tex. filed March 5, 2014), because they involve the U.S. Patent No. 7,551,732.

# INTRODUCTION

The Patent Trial and Appeal Board correctly determined that Appellee Securus Technologies, Inc. ("Securus") demonstrated by a preponderance of the evidence that U.S. Patent No. 7,899,167 ("Rae") anticipates claims 1-8 and 11-27 of U.S. Patent No. 7,551,732 (the "'732 patent") under the broadest reasonable interpretation of the claims. Appellant Global Tel*Link Corporation's ("GTL") appeal attempts to challenge two of the Board's claim constructions, but fails to show that those constructions are erroneous, or that the Board's determinations of anticipation lack substantial evidence. Accordingly, the Court should reject GTL's arguments and affirm in all respects the Board's final determination that the challenged claims are unpatentable.

## COUNTER STATEMENT OF THE ISSUES

Whether substantial evidence supports the Board's final determination that Securus proved by a preponderance of the evidence that claims 8, 11-19, and 27 are anticipated under 35 U.S.C. § 102(e) by Rae.

## COUNTER STATEMENT OF THE CASE

This appeal arises from the Board's final written decision (under 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73) that found claims 1-8 and 11-27 of the '732 patent to be unpatentable because they were anticipated under 35 U.S.C. § 102(e) by Rae. Appx0001-0041. GTL appeals that judgment with respect to only claims 8, 11-19, and 27. Claims 8 and 15 are independent. Appx0051.

1

## COUNTER STATEMENT OF THE FACTS

**A.    Overview of the '732 Patent**

The '732 patent is "directed to an apparatus and methodology for recording, at a central data center, telephone conversations originating from remote locations." Appx0043 ('732 patent, Abstract). More specifically, the '732 patent describes and claims systems and methods for monitoring telephone conversations of inmates in prison environments and recording and storing those conversations at a centralized location for later retrieval. Appx0047 ('732 patent, 1:15-35, claims 1-27).

The '732 patent alleges improvements over the prior art by using digital technology for the recording of telephone conversations, ensuring that "recorded telephone conversations will have the maximum possible availability to authorized personnel." Appx0047 ('732 patent, 2:66-3:8). Other aspects of the '732 patent include "secure and virtually unlimited off-site storage of recorded data," Appx0048 ('732 patent, 3:9-12), convenient searching of a database and accessing and reviewing "previously recorded telephone conversations stored at a remote location," Appx0048 ('732 patent, 3:13-18), and improved access and monitoring of real-time telephone conversations," Appx0048 ('732 patent, 3:19-22).

Figure 1 of the '732 patent illustrates a "generally representational block diagram" of the alleged invention. Appx0048 ('732 patent, 4:25-26). As illustrated in Figure 1, an originating telephone 10 is coupled to an Integrated Access Device ("IAD") 30. IAD 30 performs digital to analog conversion of the analog voice signal as well as compression of the digital data. Appx0045, Appx0049 ('732 patent, Fig. 1, 5:37-50). The IAD may be embodied as a device commonly known as a Voice over Internet Protocol ("VoIP") gateway. Appx0048 ('732 patent, 4:50-52). The compressed data is routed over data circuits to a central data center 110. Appx0045, Appx0049 ('732 patent, Fig. 1, 5:50-51).



At the central data center 110, the digitized conversion, along with identifying information, is stored on a data storage device. Appx0049 ('732 patent, 5:64-6:11). The digitized voice data may then be converted to a format suitable for transport on

the PSTN for completing the call to a destination telephone. Appx0045, Appx0049

('732 patent, Fig. 1, 6:12-21). Also shown in Figure 1 are workstations 170 and 170´,

which are coupled to the central data center and IAD, respectively. Appx0045

('732 patent, Fig. 1). The workstations may be used to search recordings stored in

the central data center, playback recorded conversations, and monitor real-time

conversations. Appx0049 ('732 patent, 6:22-7:4).

As shown in Figure 2 of the '732 patent, the central data center 110 comprises a terminal 210 for accessing a digital data/voice converter device 230 as well as a data storage device 220. Appx0046, Appx0050 ('732 patent, Fig. 2, 7:28-31). Data storage device 220  stores the compressed conversation data with identification data. Appx0050

('732 patent, 7:59-62). Digital data/voice converter 220, also referred to in Figure 2

as a "streaming converter," converts the voice data from storage device 220 into a

"streaming" format and passes the converted voice data back out over the WAN or

Internet. Appx0046, Appx0050 ('732 patent, Fig. 2, 8:1-9).

Independent claim 8 essentially covers a system having a telephone within a prison environment configured to communicate with a telephone at another location, an analog-to-digital converter with an input connected to the telephone within the prison environment, a storage device at another location that is coupled to the output of the analog-to-digital converter and configured to store recorded conversation data files to digital output from the analog-to-digital converter, a streaming converter coupled to the storage device, and a workstation coupled to the streaming converter. Claim 8 specifically recites:

> 8. An audio monitoring and recording system, comprising:
>
> a first telephone instrument located at a first location within a prison environment and configured for communications with a second telephone instrument located at a second location;
>
> an analog to digital converter at said first location having an analog input and a digital output, said first telephone instrument coupled to said input of said analog to digital converter;
>
> a storage device located at a third location physically remote from said first location and said second location coupled to said output of said analog to digital converter, said storage device being configured to store recorded conversation data files corresponding to said digital output of said analog to digital converter;
>
> a streaming converter coupled to said storage device; and
>
> a workstation coupled to said streaming converter, whereby audio originating from said telephone instrument may be monitored at said workstation.

Appx0051.

Independent claim 15 essentially covers a system having a remote storage device configured to store data files corresponding to recorded conversations between a telephone within a prison environment and a telephone at another location, a streaming converter coupled to the storage device, and a workstation at yet another location coupled to the streaming converter. Claim 15 recites:

> 15. An audio retrieval system, comprising:
>
> a storage device configured to store data files corresponding to recorded conversations conducted between a first telephone instrument at a first location within a prison environment and a second telephone instrument at a second location, said storage device being located at a third location remote from both said first and second locations;
>
> a streaming converter coupled to said storage device; and
>
> a workstation remotely located at a fourth location remote from each of said first, second, and third locations coupled to said streaming converter, whereby audible reproductions of said recorded conversations may be monitored at said workstation.

Appx0051.

## B.    Overview of the Invalidating Prior Art – Rae

Similar to the '732 patent, Rae is "directed to systems and methods which provide a centralized architecture for call processing." Appx0512 (Rae, 3:15-16). Specifically, Rae discloses a system utilizing Voice over Internet Protocols (VoIP) to "carry calls from a location at which calling services are provided to a centralized call processing platform." Appx0512 (Rae, 3:16-20). The centralized call processing platform provides "call processing functionality such as calling party identification,

6

call validation, call routing, connection to the public switched telephone network (PSTN), [and] call recording." Appx0512 (Rae, 3:20-24).

Figure 1 of Rae illustrates an exemplary configuration of the system disclosed by Rae. As shown in Figure 1, the system comprises one or more call processing gateways 140, such as VoIP gateways or IADs, which act as the collection point for calls and data for a particular facility and provide a link to the central call processing platform 101, for call processing and



other functionality. Appx0509, Appx0512 (Rae, Fig. 1, 3:34-39, 3:51-54). Figure 1 also illustrates that the central call processing platform may provide centralized processing for multiple facilities. The system may also comprise local or remote

terminals 142 coupled to the call processing gateways or centralized call processing platform for accessing the various functionalities of the system. Appx0509, Appx0512, Appx0516-0517 (Rae, Fig. 1, 3:45-50, 12:63-13:9).

As an example, after a call is connected by call processing platform 101, the call application management system 110 may signal call recording system 116 to record the call content. Appx0509-0510, Appx0519 (Rae, Figs. 1-2, 18:3-9). Call recording system 116 will then store the call content (i.e., the conversation) in a digital format along with ancillary call information. Appx0515 (Rae, 9:49-67). From a remote workstation 142, a user can logon to central call processing platform 101 and play back recorded conversations or monitor ongoing conversations. Appx0515, Appx0519 (Rae, 9:63-67, 17:20-30).

## C.     Overview of the Proceeding Below

Securus filed its petition for *inter partes* review of the '732 patent on October 24, 2014, on the ground that claims 1-27 of the '732 patent are anticipated by Rae. Appx0054-0117.

In its preliminary response, GTL proposed construction of just one term, "streaming converter," arguing that it should be construed as "hardware and/or software that converts compressed voice data into streaming format." Appx0157-0158. Following GTL's preliminary response, the Board adopted GTL's proposed construction of "streaming converter," but nevertheless found that Securus established that there was a reasonable likelihood that it would prevail in challenging

8

claims 1-8 and 11-27 of the '732 patent and instituted trial. Appx0181-0203.

Prior to trial, GTL deposed Securus' expert, Dr. Robert Akl, Appx0222-0224, obtained a declaration from its own purported expert, Dr. Leonard J. Forys, Appx2319, marshaled its arguments, and attempted to address the instituted grounds of unpatentability. Appx0235.

In its response, GTL proposed construction of only two terms, "streaming converter" and "logical search." Appx0246. "For completeness," GTL reiterated its same arguments regarding the construction of "streaming converter," but did not propose a construction that would require the "streaming converter" to be a different structure than the "analog to digital converter." Appx0246-0249. Further, GTL did not contend that the Board should construe "files" or "analogic to digital converter." Appx0246-0250. Instead, GTL argued that Securus had failed to demonstrate that Rae discloses the storage of "recorded conversation data files" and that Rae's VoIP gateway cannot equate to both the "analog to digital converter" and "streaming converter." Appx0250-0254; Appx0256-0259.

Securus replied to GTL's response, contested GTL's proposed constructions of "streaming converter" and "logical search," argued that Rae disclosed the storing of data files, and disputed GTL's contention that Rae's VoIP gateway could not include both the "analog to digital converter" and the "streaming converter." Appx0298, Appx0302-0306, Appx0306-0308, Appx0310-0311. The case proceeded to oral hearing. Appx0354.

9

The Board issued its final written decision on April 29, 2016. Appx0001. With respect to the parties' claim construction disputes, the Board adopted once again GTL's construction of "streaming converter," and it declined to construe "logical search." Appx0009-0012. While the Board recognized that neither party had proposed a construction of the term "file," it nonetheless considered the construction of the term in light of the record developed during trial. Appx0012-0013.

The Board rejected GTL's arguments that the term "file" should be interpreted according to GTL's "special purpose dictionary definition," as a "[c]omplete, named collection of information," or construed as data having a particular "storage format" or "the name[d] collection of data blocks." Appx0013. The Board found that the nothing in the claim language itself required "that the data be stored in a particular manner, such as a data block, a disk, or a file." *Id.* Further, the Board found that the specification did not require "that the data be stored in a particular way" and did not define "the term 'file' … explicitly or implicitly." Appx0014. To the contrary, the Board found that the specification "belies [GTL's] position that a 'file' must be 'complete' and 'named' at all times in the disclosed process" and that it discloses an embodiment in which storage of the compressed conversion data "may be, but is not limited to, a so-called relational database arrangement." *Id.* (citing '732 patent, 5:66-6:5, 7:62-63).

Based on these findings, the Board concluded that the term "file" should be accorded "its ordinary and customary meaning, as would be understood by one of

ordinary skill in the art, in the context of the entire disclosure of the '732 patent." *Id.* And, after consulting Merriam-Webster's definition of "file," as "(1): a collection of related data records (as for a computer) (2): a complete collection of data (as text or a program) treated by a computer as a unit especially for purposes of input and output)," the Board concluded "that the broadest reasonable interpretation of 'file' is 'a collection of data.'" Appx0014-0015.

On the question of anticipation by Rae, the Board rejected GTL's argument that Rae fails to disclose the claimed "data files" in independent claims 8 and 15. Appx0020-0021. The Board found that "Petitioner's position regarding Rae's disclosure of storage of the call content is consistent with [the Board's] claim construction" of "file" as "a collection of data." Appx0021. The Board also rejected GTL's argument that Rae fails to disclose the claimed "streaming converter" of claims 8 and 15. Appx0021-0024. The Board found that Securus demonstrated that Rae discloses this limitation even under the Board's construction of "streaming converter." Appx0023. Further, the Board rejected GTL's argument that Rae's VoIP gateway could not disclose both the "streaming converter" and the "analog to digital converter." Appx0023-0024. The Board found that Securus persuasively demonstrated that, based on at least one embodiment in the specification, both converters could be included in one element (IAD 30) at a single location, just like Rae's VoIP gateway. Appx0024 (citing '732 patent, 5:30-43, 5:48-50).

For the reasons set forth below, the Board did not make any legal errors that

could support reversal of any portion of its final written decision. Because the Board's decision is supported by substantial evidence, the Court should affirm the decision in all respects.

## SUMMARY OF THE ARGUMENT

GTL's appeal raises two distinct claim construction issues. Both issues are without merit. The Board correctly construed the term "file" because (a) substantial evidence supports the Board's factual finding that a person of ordinary skill in the art would have understood that the ordinary and customary meaning of "file" to mean "a collection of data"; and (b) the ordinary and customary meaning of "file" is consistent with the intrinsic evidence because it does not limit the meaning of "file" to data having a file format. Further, even if the Board's construction were incorrect (and it is not), the Court should still affirm the decision because substantial evidence supports the Board's determination that Rae discloses a "file" even under GTL's proposed construction.

GTL is estopped from challenging the Board's construction of "streaming converter" because it affirmatively advocated for the construction adopted by the Board, and it did not propose a construction that would prohibit the claimed "streaming converter" and "analog to digital converter" from existing within the same device (e.g., within a VoIP gateway). Further, the Court should not disturb the Board's determination that Rae discloses the claimed "streaming converter" because GTL does not dispute that Rae's VoIP gateway meets the Board's claim construction

12

of "streaming converter," and nothing in the claims or the specification requires that the "streaming converter" and "analog to digital converter" elements exist in completely separate structures.

## ARGUMENT

### A.    Standard of Review

GTL has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). The Court reviews the Board's legal determinations de novo and its underlying factual determinations for substantial evidence. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1251 (Fed. Cir. 2013).

Anticipation is a question of fact and thus the Board's anticipation determination is reviewed for substantial evidence. *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015). The Court reviews "the Board's ultimate claim constructions de novo and its underlying factual determinations involving extrinsic evidence for substantial evidence." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

**B.    Substantial Evidence Supports the Board's Decision that Independent Claims 8 and 15 Are Anticipated by Rae.**

For both independent claims 8 and 15, GTL asserts that the Board made two errors in claim construction that should result in reversal of the Board's final written decision. The Court should reject GTL's arguments because substantial evidence supports the Board's determinations that Rae discloses both storing "files" and a "streaming converter."

**1.    Substantial Evidence Supports the Board's Determination that Rae Discloses Storing "Files."**

**a.    The Board's Construction of "File" Is Correct.**

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016) (holding that 35 U.S.C. § 316(a)(4) "gives the Patent Office the legal authority to issue its broadest reasonable construction regulation"). "Under a broadest reasonable interpretation, words of the claim ***must*** be given their plain meaning, unless such meaning is inconsistent with the specification and prosecution history." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062 (Fed. Cir. 2016) (emphasis added). As explained below, the Board properly concluded that the broadest reasonable interpretation of "file" is "a collection of data" because (a) substantial evidence supports the Board's finding regarding the ordinary and customary meaning of "file"; and (b) the ordinary and customary meaning of "file"

is consistent with the intrinsic evidence.

### i. Substantial Evidence Supports the Board's Factual Finding that the Ordinary and Customary Meaning of "File" Is "a Collection of Data."

GTL contends that the Board erroneously construed the term "file" because, *according to Dr. Forys*, GTL's purported expert, a person of ordinary skill in the art would have understood that "data can be stored in several ways," including "as data blocks (typical in the case of a database), or on certain types of disks," and "data files include features not found in a data block." Blue Brief at 11; *see also* Appx2344-2354, GTL Ex. 2010 ¶ 54.

But the Board was entitled to weigh Dr. Forys' testimony, along with the other extrinsic evidence of record, and find *as a matter of fact* that the ordinary and customary meaning of "file," as would be understood by one of ordinary skill in the art, in the context of the entire disclosure of the '732 patent, is "a collection of data." *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, --- F.3d ----, 2016 WL 5864573, at *2 (Fed. Cir. Oct. 7, 2016) (en banc) ("The Supreme Court made clear that the factual components [of claim construction] include 'the … meaning of a term in the relevant art during the relevant time period.'") (quoting *Teva Pharms., Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015)).

GTL fails to show that the Board's factual finding regarding the meaning of "file" in the relevant art lacks substantial evidence. *See* Blue Brief at 11-12. Nor could it, as the Board's finding is supported at least by Merriam-Webster's

dictionary, which defines "file" as, *inter alia*, "a complete collection of data (as text or a program) treated by a computer as a unit especially for purposes of input and output)," as well as GTL's own dictionary definition of "file," which includes "a set of data used by a program." Appx0013-0014. Thus, substantial evidence supports the Board's interpretation of "file." *See Consol. Edison*, 305 U.S. at 229; *Jolley*, 308 F.3d at 1329.

### ii. The Ordinary and Customary Meaning of "File" Is Consistent with the Intrinsic Evidence.

GTL fails to show that the Board erred by adopting the plain and ordinary meaning of "file" as the broadest reasonable interpretation, as opposed to a narrow construction based on the intrinsic evidence. Blue Brief at 11-12.

Notably, GTL does not dispute the Board's determination that the specification of the '732 patent fails to define "file" either "explicitly or implicitly" and does not support an interpretation of "file" that would require that data be complete, named, or stored in a particular file format. *See* Appx0014. Nor does GTL address the fact that the specification "describes an embodiment in which storage of the compressed conversation data 'may be, but is not limited to, a so-called relational database arrangement,'" which supports a broader interpretation of "file" that also includes "data blocks." *See id.*; *see also* Appx2344-2354 (GTL Ex. 2010 ¶ 54) ("[D]ata may be stored in the form of data blocks as is often the case ***when data is stored in a database*** ….") (emphasis added). GTL has thus abandoned any argument

that the specification supports its interpretation of "file." *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Instead, GTL asserts that "[t]he claims themselves support the conclusion that the 'file' limitation requires the relevant data to be stored in a file format (*i.e.*, a complete, named collection of information)." Blue Brief at 11. In particular, GTL contends that its construction is required by the doctrine of claim differentiation, since "claims 1 and 20 recite the broader requirement of data storage, but they do not require storage of data in the form of a 'file.'" *Id.* at 11-12. But the claim language does not specify that data "files" must be stored in any format, much less a complete, named collection of information. Appx0051 ('732 patent, claims 8 and 15). And GTL never made its claim differentiation argument to the Board, so it cannot be raised on appeal. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) ("Absent exceptional circumstances, we generally do not consider arguments that the applicant failed to present to the Board.") (citations omitted).

Notwithstanding, GTL's new claim differentiation argument is without merit. "Claim differentiation is a guide, not a rigid rule." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016). "The doctrine of claim differentiation creates a presumption that distinct claims, ***particularly an independent claim and its dependent claim***, have different scopes." *World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1125 (Fed Cir. 2014) (emphasis added). The Court has declined to

17

apply the doctrine where "the claims are not otherwise identical in scope." *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016) (declining to apply the doctrine of claim construction to a series of independent claims). Because claims 8 and 15 do not depend from claims 1 and 20, the doctrine of claim differentiation does not apply. *See id.*

Moreover, the claims use "conversation data" and "conversation data files" in different contexts to mean different things. Claims 1 and 20 use "conversation data" to refer to information collected "from conversations conducted by way of said first telephone instrument" and "from inmate conversations" before that information is recorded, whereas claims 8 and 15 use "conversation data files" to refer to "recorded" conversation data that may be stored in the "storage device." *Compare* Appx0050 ('732 patent, 8:53-55), *and* Appx0051 ('732 patent, 10:27-29), *with* Appx0051 ('732 patent, 9:24-26), *and* Appx0051 ('732 patent, 9:52-56). Thus, the Board's construction of "file" permits these terms to have different meanings.

Contrary to GTL's suggestion, *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017 (Fed. Cir. 1987), actually demonstrates why the doctrine of claim differentiation does not apply here. Blue Brief at 12. As that panel noted, "practice has long recognized that claims may be multiplied … to define the metes and bounds of the invention in a variety of different ways. Thus two claims which read differently can cover the same subject matter." *Id.* at 1023 (citations and quotations omitted). Accordingly, the Court, in analyzing the construction of three independent

18

claims (claims 1, 5, and 12), rejected the appellant's argument "that since claim 5 expressly describes the first transducer as non-gimballed, claims 1 and 12 must be read as encompassing a gimballed first transducer." *Id.* at 1023-24. Likewise, the presence of the term "file" in claims 8 and 15 of the '732 patent does not require that claims 15 and 20 be read to exclude a "file."

GTL's reliance on *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), is likewise misplaced. Blue Brief at 11. There, the panel construed a claim term "about" to mean its accepted and ordinary meaning of "approximately," instead of "exactly," to avoid rendering the phrase "alendronic acid basis" in the same claim superfluous. *Id.* at 1372. Here, the Board's construction gives meaning to the term "file," but does not render any other term in claims 8 and 15 superfluous. Accordingly, the Court should affirm the Board's construction of "file."

### b.    GTL Fails to Show that Any Error in the Board's Construction of "File" Requires Reversal.

GTL contends that the Court should reverse the Board's final written decision if it concludes that the Board's construction of "file" is incorrect. Blue Brief at 12-13. But, even if the Court adopts GTL's construction of "file" to require disclosure of a file format, substantial evidence still supports the Board's finding that Rae anticipates the claims. Reversal is therefore inappropriate. *See Harari v. Lee*, 656 F.3d 1331, 1333 (Fed. Cir. 2011) (affirming in part the Board of Patent Appeals and Interferences' judgment despite its erroneous claim construction); *see also Grabis v.*

*Office of Personnel Mgmt.*, 424 F.3d 1265, 1270 (Fed. Cir. 2005) (holding that an agency decision can be affirmed on a different ground if "it is clear that … the agency would have reached the same result"); *Bivings v. U.S. Dep't of Agriculture*, 225 F.3d 1331, 1335-36 (Fed. Cir. 2000) (holding that an agency decision can be affirmed if based on the same ground, even if the "reasoning for reaching that conclusion differs from the [agency]").

Contrary to GTL's suggestion, Rae does not "merely disclose[] the various types of media on which data can be stored" and fail to disclose that the files are stored in a format. Blue Brief at 12-13. To the contrary, Securus demonstrated that Rae discloses that data are stored in a "digital format." Appx0307 (Rae, 9:63-67) ("Although the content of the call may be recorded in an analog format, preferred embodiments of the present invention record the content in a *digital format* to readily facilitate retrieval and/or playback via digital means, such as upon workstation 142 via network 130.") (emphasis added).

While Rae does not explicitly use the word "file," prior art need not be *ipsissimis verbis* (i.e., use identical words as those recited in the claims) to be anticipating. *In re Bond*, 910 F.2d 831, 832-33 (Fed. Cir. 1990) (holding that anticipation "is not an '*ipsissimis verbis* test'"). Nor was Securus required to demonstrate anticipation by inherency. *See* Blue Brief at 13. The proper inquiry for anticipation is whether a reference discloses the claimed limitation to a person of ordinary skill in the art. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336

(Fed. Cir. 2008) ("[T]he meaning of a prior art reference requires analysis of the understanding of an artisan of ordinary skill."); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991) (holding that, to anticipate, "[t]here must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention"), *overruled on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009).

And Securus' expert, Dr. Akl, testified that a person of ordinary skill in the art would understand Rae's disclosure of call recordings to be files in a particular format:

> In the system disclosed by Rae, files corresponding to the recorded conversations are stored via call recording system 116. According to Rae, "call application management system 110 may signal call recording system 116 to record or not record particular calls processed by call processing platform 101. For example, all calls placed from any of facilities 150-180 to any party except an attorney representing a party to the call may be recorded by call recording system 116." (Rae, 10:1-7.) *A person of ordinary skill in the art would understand Rae's disclosure of recording and storing call content to a storage disk to mean the recorded conversations are stored in audio data files. A "data file," such as a ".wav" file as disclosed by the '732 patent, is well understood to be a common medium for storing digital audio.* (*See* '732 patent, 6:48-53.)

Appx0589-0590 (emphasis added). This is substantial evidence supporting the Board's determination that Rae discloses a "file" even under GTL's construction. *See Consol. Edison*, 305 U.S. at 229; *Jolley*, 308 F.3d at 1329.

That one of ordinary skill would understand Rae to disclose storing recorded conversations as data "files" is further supported by U.S. Patent No. 6,052,454 ("Kek"). *See* Appx0308; Appx1010. While Rae may not have incorporated Kek's entire disclosure by reference, Rae incorporated by reference at least Kek's "telephone apparatus for providing service to a plurality of telephones located at a particular facility, having the capability of controlling the connection of calls and recording selected phone conversations." Appx0511. And the recording system of Kek's telephone apparatus expressly contemplates giving each recorded conversation a "unique file name." Appx1021 (Kek, 9:49, 9:62-65).

Rae provided sufficient detail to incorporate by reference the relevant disclosure from Kek. *See, e.g.*, *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376-77 (Fed. Cir. 2006) (upholding incorporation by reference where the patent expressly incorporated a "procedure for preparing intestinal submucosa detailed" in another patent). GTL's reliance on *Zenon Envtl. v. U.S. Filter Corp.*, 506 F.3d 1370 (Fed. Cir. 2007), is misplaced. In *Zenon*, the patent at issue incorporated "details relating to the construction and deployment of a most preferred skein," but ***not*** the portion relating to "the gas distribution system" referenced by Zenon. *Id.* at 1379-80. Here, on the other hand, the statement incorporating Kek by reference specifically mentions the relevant embodiment that discloses giving each recorded conversation a "unique file name." *See* Appx1010. It makes no difference under *Zenon* that the incorporating statement was made in a background of Rae.

22

Securus properly raised its incorporation-by-reference argument to rebut GTL's contention that, despite Rae's disclosures and Dr. Akl's testimony, a person of ordinary skill would not have understood Rae to disclose storing "files." Appx0252-0254. Moreover, even if Securus' argument did not respond to a specific argument made by GTL, GTL did not suffer any prejudice as GTL responded to this argument at the oral hearing and did not move to exclude the argument or seek leave to file a surreply. Appx0457-0459.

Because substantial evidence supports the Board's determination that Rae discloses storing "files," even under GTL's incorrect construction, the Court should affirm the Board's decision in this regard.

### 2. Substantial Evidence Supports the Board's Determination that Rae Discloses the Claimed "Streaming Converter."

### a. GTL Is Estopped From Challenging to the Board's Construction of "Streaming Converter" and Decision Not to Construe "Analog to Digital Converter."

Although GTL frames its argument as a challenge to the Court's construction of the terms "streaming converter" and "analog to digital converter," it is really a challenge to the Board's factual finding that Rae discloses the claimed "streaming converter." Blue Brief at 14-20. While GTL argued below that Rae's VoIP gateway cannot equate to both the "analog to digital converter" and "streaming converter," GTL repeatedly presented this argument *not* as a claim construction issue, but rather as an argument allegedly demonstrating that "Rae does not disclose the recited

streaming converter." Appx0254-0259 (emphasis omitted); *see also* Appx0163-0164. Specifically, GTL contended that Securus "does not identify 'how both an analog to digital converter and a streaming converter could reside within the call processing gateway' described in Rae." Appx0256-0257. In other words, GTL argued that Securus failed to demonstrate how Rae disclosed both of these claim elements.

Notably, GTL never proposed a construction of the terms "streaming converter" or "analog to digital converter" that would prohibit both converters from existing within the same device (e.g., within a VoIP gateway). Indeed, GTL did not propose any construction of "analog to digital converter," and it repeatedly advanced a construction of "streaming converter" that did not include a limitation requiring it to be separate from the claimed "analog to digital converter." Appx0158-0160; Appx0246-0250. GTL even reiterated at the hearing its view that the Board's construction of "streaming converter" is the broadest reasonable interpretation of this claim term "because it is consistent with the specification." Appx0476. The Board addressed GTL's arguments in this context and ***adopted without modification*** GTL's proposed construction of "streaming converter." *See* Appx0009-0011. GTL should not be permitted to recast this argument as a claim construction issue for the first time on appeal in an attempt to avoid the Court's more deferential standard of review of the Board's factual findings regarding anticipation. *See Kennametal*, 780 F.3d at 1381.

Thus, any error in the Board's construction of "streaming converter" as "hardware and/or software that converts voice data into a streaming format," and decision to decline construing "analog to digital converter," was invited by GTL. Accordingly, GTL is judicially estopped from challenging its own proposed constructions on appeal. *See, e.g.*, *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("[W]e look with 'extreme disfavor' on appeals that allege error in claim constructions that were advocated below by the very party now challenging them."); *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) ("The impropriety of asserting a [claim construction] position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct."). The Court should reject GTL's argument for this reason alone.

### b.    Substantial Evidence Supports the Board's Finding that Rae's VoIP Gateway Is the Claimed "Streaming Converter."

GTL does not dispute that substantial evidence supports the Board's finding that Rae's VoIP gateway includes "hardware and/or software that converts voice data into a streaming format." *See* Blue Brief at 14-20. Nonetheless, GTL contends that Rae's VoIP gateway could not disclose the claimed "streaming converter" because Securus also contended that Rae's VoIP gateway discloses the claimed "analog to digital converter." *See id.* This argument should be rejected.

25

Although claims 8, 26, and 27 recite both a "streaming converter" and an "analog to digital converter," nothing in the claims or the specification requires that those elements exist in separate structures. To the contrary, the claims define "streaming converter" and "analog to digital converter" by the functions that they perform, and not by the structure of the elements or relative positions. Appx0024. Indeed, GTL does not dispute that nothing in the claims precludes the "streaming converter" and "analog to digital converter" from residing at the same location. *See* Blue Brief at 20. Thus, the functionality of each claim element can be contained in a single device at one location (i.e., Rae's VoIP gateway) and still match the claim language.

This conclusion is reinforced by specification of the '732 patent. The specification discloses that the IAD 30 "converts … analog voice information into digital data," which "is further processed by a compression module within IAD 30 into highly compressed data." Appx0049 ('732 patent, 5:38-40, 5:48-50). GTL fails to explain how the IAD module that converts analog voice information into digital voice data is not an "analog to digital converter" or how the IAD module that processes that digital voice data into a compressed format is not a "streaming converter" pursuant to the Board's construction of that term. Blue Brief at 20. Nor could it. The specification makes clear that the "IAD 30 may be embodied as … a [VoIP] Gateway." Appx0048 ('732 patent, 4:50-52) (emphasis added). And Dr. Akl testified that "a person of ordinary skill in the art would understand a VoIP gateway

to convert analog voice signals to digital data in a 'streaming format' for transmission of live voice conversations." Appx0575.

Further, the Board properly rejected GTL's attempt to limit the claims to a specific embodiment disclosed in Figure 2, which shows a "streaming converter" in the central data center 110 that is separate from the IAD 30. Appx0023-0024. GTL's argument is nothing more than improper attempt to import limitations from a preferred embodiment into the claims. *See In re Bigio*, 381 F.3d 1320, 1324-25 (Fed. Cir. 2004) ("Absent claim language carrying a narrow meaning, the PTO should only limit the claim based on the specification or prosecution history when those sources expressly disclaim the broader definition."); *see also Resonate, Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003) ("[L]imitations may not be read into a claim from a preferred embodiment when the claim language is broader than that embodiment.").

GTL's reliance on *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249 (Fed. Cir. 2010), is misplaced. In *Becton*, the claim language "***suggested***" and the specification "***confirmed***" that the claimed "spring means" and "hinged arm" were separate structures. *Id.* at 1254 (emphasis added). Separate panels of this Court have repeatedly held that, absent such findings, there is no requirement that multiple claim limitations require separate structures. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2011) (finding that a single structure could satisfy the "cutting box" and "dust collector structure" limitations); *Retractable Techs., Inc.*

*v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1303 (Fed. Cir. 2011) ("The claims and the specification indicate that the 'needle holder' and 'retainer member' need not be separately molded pieces.").

*Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398 (Fed. Cir. 1996), is similarly distinguishable because, unlike the '732 patent, the specification made clear that the claimed "second portion" and "return portion" were separate structures. In particular, the specification stated that the "second portion" was "'bent rearwardly' in the direction opposite the end of the duct wall," whereas the "return portion" was "also provided" and "clearly bent forwardly to extend in the same direction as the end of the duct wall." *Id.* at 1404-05. In contrast, claim 8 defines the "streaming converter" and "analog to digital converter" according to their functions, but not their structure or relative positions within the claimed systems. Indeed, the Board correctly found that both converters could reside at the same location. *See* Appx0049, Appx0051 ('732 patent, 5:41-43, 9:15-16, 9:18, 9:22-23, 9:28).

For the first time on appeal, GTL argues that "[d]ependent claim 10 elucidates that these separately-claimed components are just that—separate." Blue Brief at 16. But GTL never presented this argument to the Board during the proceeding. Appx0163-0164; Appx0256-0259. Therefore, it cannot be raised on appeal. *See Baxter Int'l*, 678 F.3d at 1362. Notwithstanding, GTL's new argument is without merit. While dependent claim 10 narrows independent claim 8 by providing that the "streaming converter may be selectively coupled to said output of said analog to

digital converter," claim 8 is presumptively broader than this dependent claim. *See, e.g.*, *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010) (concluding that "[u]nder the doctrine of claim differentiation, those dependent claims give rise to a presumption that the broader independent claims are not confined to that range"). As such, independent claim 8 must include embodiments of the invention where the "streaming converter" is ***not*** selectively coupled to the output of the "analog to digital converter," such as where the two converters reside in the same device (e.g., a VoIP gateway).

Because substantial evidence supports the Board's determination that Rae's VoIP gateway is the claimed "streaming converter," the Court should affirm the Board's decision in this regard.

## CONCLUSION

For the foregoing reasons, Securus respectfully requests that the Court affirm the Board's final written decision in all respects.

Dated: November 16, 2016           Respectfully submitted,

                                          */s/ Jeffrey Bragalone*

Jeffrey R. Bragalone
Justin B. Kimble
Daniel F. Olejko
Terry A. Saad
BRAGALONE CONROY PC
2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
214-785-6670

*Counsel for Appellee*
*Securus Technologies, Inc.*

2

𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals
for the 𝔉ederal 𝔆ircuit

*Global Tel\*Link Corporation v. Securus Technologies, Inc.*, 2016-2135

## CERTIFICATE OF SERVICE

I, Daniel F. Olejko, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **November 16, 2016**, I caused the foregoing **APPELLEE SECURUS TECHNOLOGIES, INC.'S RESPONSE BRIEF** to be electronically filed with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Jon Wright (Principal Counsel)
Ross G. Hicks
Michael Bradley Ray
Michael D. Specht
Sterne Kessler Goldstein & Fox, PLLC
1100 New York Avenue, NW
Washington, DC 20005
202-772-8825
jwright@skgf.com
rhicks@skgf.com
mray@skgf.com
mspecht@skgf.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

November 16, 2016

*/s/ Daniel F. Olejko*
Daniel F. Olejko
BRAGALONE CONROY PC

*Counsel for Appellee*
*Securus Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

__ X __ The brief contains 6,654 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

__ X __ The brief has been prepared in a proportionally spaced typeface using M.S. Word 2013 in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

Dated: November 16, 2016                    _/s/ Daniel F. Olejko_____
                                            Daniel F. Olejko
                                            BRAGALONE CONROY PC

                                            *Counsel for Appellee*
                                            *Securus Technologies, Inc.*